

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN TANNER, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ACUSHNET COMPANY and ACUSHNET HOLDINGS CORP.,<br><br>Defendants. | Case No. 8:23-cv-00346-HDV-ADSx<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT [25]** |

## I.    INTRODUCTION

Plaintiff brings a putative class action complaint against Defendants Acushnet Company and Acushnet Holdings Corp. (collectively, "Acushnet") for Acushnet's use of third-party software used to collect information from users of their websites.  Plaintiff's First Amended Complaint ("FAC") alleges violations of the California Invasion of Privacy Act ("CIPA") and other state law claims for the alleged interception of consumers' communications through this technology.

Before the Court is Defendants' motion to dismiss all claims under Fed. R. Civ. P. 12(b)(6). ("Motion").  For the reasons discussed below, the Court denies the Motion as it relates to Plaintiff's CIPA claim and invasion of privacy claims, but grants the Motion and dismisses without leave to amend the claims for statutory larceny and unfair competition.

## II.    BACKGROUND

Acushnet operates the brands "Titleist," which designs and sells performance sports equipment, and "FootJoy," which designs and sells performance sportswear.  FAC ¶ 11.  Titleist and FootJoy are two of golf's most well-known brands.  *Id*. ¶¶ 47, 48.  For each brand, Acushnet operates a consumer-facing e-commerce website: Titleist.com and FootJoy.com.  *Id*. ¶ 11.

On each website, Acushnet employs a software technology called "Session Replay Code." The Session Replay Code enables website operators and the third-party providers of the technology to record, save, and replay users' interactions with the website.  *Id*. ¶ 25.  The code captures interactions at a granular level, including all of the user's mouse movements, clicks, scrolls, zooms, window resizes, keystrokes, text entry, and other navigations through the website.  *Id*. ¶ 29. Acushnet does not create and deploy the Session Replay Code itself; rather it hires third-party "Session Replay Providers," who provide and manage the technology.[1]

Website users are unaware of the presence of Session Replay Code on Acushnet's websites and therefore do not realize the communications they expect to be solely between themselves and Acushnet are being captured by the Session Replay Providers.  *Id*. ¶¶ 6-7.  Session Replay Providers

---

[1] For its Session Replay Providers, Plaintiff alleges Acushnet uses the companies Hotjar, FAC ¶ 52, and FullStory, FAC ¶ 55.  Neither are named as defendants here.

use the information captured to recreate a video playback of the user's interaction with the website. *Id.* ¶¶ 31, 59.  Session Replay Providers can also use the technology to "fingerprint" an individual's browsing session and associate it with that individual as they visit other websites with Session Replay Code enabled.  *Id.* ¶¶ 39-40.

Plaintiff John Tanner visited and interacted with the Acushnet websites, unaware of the intimate level of detail being captured by the Session Replay Code without his consent.  *Id.* ¶¶ 64-72, 87.  Plaintiff asserts his claim on behalf of all people "in California whose Website Communications were captured in California through the use of Session Replay Code embedded in Titleist.com and in FootJoy.com."  *Id.* ¶ 91.

## III.   LEGAL STANDARD

Acushnet brings this Motion pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").  Rule 12(b)(6) allows a party to seek to dismiss a complaint for "failure to state a claim upon which relief can be granted."  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Ultimately, however, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face."  *Iqbal,* 556 U.S. at 697 (quoting *Twombly,* 550 U.S. at 570).  Only where a plaintiff fails to "nudge[ ] [his or her] claims ... across the line from conceivable to plausible[,]" is the complaint properly dismissed.  *Iqbal,* 556 U.S. at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678.  The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id*. at 679.

## IV.   DISCUSSION

In this putative class action, Plaintiff challenges Acushnet's use of software used to collect

information from users of their websites. Plaintiff's FAC asserts six claims: (1) violation of the California Invasion of Privacy Act, Cal. Penal Code § 630, *et seq*.; (2) statutory larceny in violation of Cal. Penal Code §§ 484, 496; (3) invasion of privacy under Cal. Const. Art. I § 1; (4) common law intrusion upon seclusion; (5) common law publication of private facts;[2] and (6) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.

**A. California Invasion of Privacy Act, Cal. Penal Code § 630, *et seq*.**

Section 631 of CIPA prohibits four specific acts of wiretapping. It provides, in relevant part:

(a) Any person who, by means of any machine, instrument, or contrivance, or in any other manner,

[1] intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or

[2] who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or

[3] who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or

[4] who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section,

is punishable [under this Section].

---

[2] Plaintiff withdraws his claim for Publication of Private Facts in Count V. Plaintiff's Opposition to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint ("Opp.") at 10 [Dkt. No. 30].

Cal. Penal Code § 631(a) (subsections added and formatted for clarity).

Plaintiff alleges that, by employing Session Replay Providers who tracked and recorded Plaintiff's electronic communications, Acushnet has violated the fourth prong penalizing aiding and abetting. FAC ¶ 108. For prong four of § 631 to be violated, Plaintiff must also allege at least one other violation under prongs one through three. Plaintiff's claim against Acushnet for aiding in unlawful wiretapping is predicated on the theory that their Session Replay Providers violated the second prong. *Id*. ¶ 107.

### 1. Contents of Communication

At the outset, the Court must determine whether the information captured by the Session Replay Code is protected under CIPA—in other words, whether it is "the contents or meaning of any message." "The analysis for a violation of CIPA is the same as that under the federal Wiretap Act." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (citation omitted). Under the Wiretap Act, "contents" is defined as "any information concerning the substance, purport, or meaning of [a] communication." 18 U.S.C. § 2510(8). "[T]he term 'contents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *Graf v. Zynga Game Network, Inc. (In re Zynga Privacy Litig.)*, 750 F.3d 1098, 1107 (9th Cir. 2014) (holding "referer header information ... transmitted to third parties .... does not meet the definition of 'contents,' because these pieces of information are not the 'substance, purport, or meaning' of a communication"). Such "record information" includes, among other things, the "'name,' 'address,' and 'subscriber number or identity' of a subscriber or customer." *Id.* at 1106 (citing 18 U.S.C. § 2702(c)(2)).[3] Data including "the date and time of the visit, the duration of the visit, [a p]laintiff's

---

[3] Whether information is "content" or "record information" can depend in part on the manner in which the information is generated, as information that would otherwise be considered "record information"—such as names, addresses, telephone numbers, and email addresses—may be "contents" of a communication where the user communicates with a website by entering his information into a form provided by the website. *See Graf v. Zynga Game Network, Inc. (In re Zynga Privacy Litig.)*, 750 F.3d 1098, 1107 (9th Cir. 2014) (citing *Blumofe v. Pharmatrak, Inc. (In re Pharmatrak, Inc. Privacy Litig.)*, 329 F.3d 9, 15, 18-19 (1st Cir. 2003)).

5

IP address, her location at the time of the visit, her browser type, and the operating system on her device" also does not "constitute[] message content." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082-83 (C.D. Cal. 2021).

Defendants contend that the intercepted information does not amount to substantive communications, but rather is merely "record information" that is not protected under CIPA. Motion at 17. The Court disagrees. The Session Replay Providers allegedly capture a user's mouse movements, clicks, scrolls, zooms, window resizes, keystrokes, text entry, search terms, requests to view product information, and information entered into form fields and text boxes—even when the user does not ultimately submit that information. FAC ¶¶ 6, 29, 55-56, 59, 68, 71. Session Replay Providers record these details and create a video playback that allows the Session Replay Provider and its client to watch Plaintiff's entire session interacting with the site. *Id.* ¶¶ 29-33. Although perhaps not all of this information is "content" under CIPA, much of what is captured certainly is and the allegations are more than sufficient for pleading purposes. *See, e.g.*, *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 517–18 (C.D. Cal. 2021) (finding allegations that Defendant "captures mouse movements, clicks, typing, scrolling, swiping, tapping, keystrokes, geographic location, IP addresses, and data entry … alongside a video capturing each of Plaintiff's keystrokes and mouse clicks on the website" were sufficient to show content at the pleading stage).

2. Parties to Plaintiff's Communication with Acushnet

To establish (for pleading purposes) an underlying violation of the second prong of Section 631, Plaintiff must sufficiently allege that the Session Replay Providers were parties to his communications who were present without the Plaintiff's consent. If the Court finds that only the consumer and Acushnet participated in or were parties to the communication, liability under CIPA would not attach; a third party is absolutely a prerequisite. *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 898 (N.D. Cal. 2023) (citing *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899, 125 Cal. Rptr. 306 (1975)).

Defendants argue that the Session Replay Providers were not technically parties to the communications on the website because they were only recording the relevant information. Motion at 14-16. When a party to a conversation records it, that party is not eavesdropping, but rather is

6

acting as a "tape-recorder." *Javier*, 649 F. Supp. 3d at 898; *see In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020), *cert. denied*, No. 20-727, 141 S.Ct. 1684, 209 L. Ed. 2d 464 (U.S. Mar. 22, 2021).  Some courts have found that software providers are mere "'extensions' of the websites that employ them, and thus not third parties within the meaning of the statute because they are merely functioning as a tape-recorder of the website." *Javier*, 649 F. Supp. 3d at 899 (quoting *Graham v. Noom*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021)); *see also Williams v. What If Holdings, LLC*, No. 22-cv-3780, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022).

To decide whether the Session Replay Providers here are truly third parties under CIPA, the Court must decide whether the Session Replay Providers acted merely as a tape-recorder of Acushnet or a third-party eavesdropper.  *Yoon*, 549 F. Supp. 3d at 1081 ("The question thus becomes, in analogue terms: is Quantum Metric a tape recorder held by Lululemon, or is it an eavesdropper standing outside the door?"); *Williams*, 2022 WL 17869275, at *3 ("[T]he question boils down to whether ActiveProspect was an independent third party hired to eavesdrop on What If's communications, or whether ActiveProspect's software was merely a tool that What If used to record its own communications with plaintiff.").  In answering this question, courts have found "a key distinction is whether or not the alleged third-party software provider aggregates or otherwise processes the recorded information, which might suggest that the software vendor independently 'uses' the gathered data in some way.  *Williams*, 2022 WL 17869275, at *3 (finding software provider was a mere tool of Defendant where Defendant stored and accessed the data collected on its own servers) (citing *Graham*, 533 F. Supp. 3d at 832–33).  Numerous courts that have acknowledged this distinction require plaintiffs to allege facts indicating that the third party is recording the customers' information "for some use or potential future use beyond simply supplying this information back to Defendant." *Cody v. Boscov's, Inc.*, No. 8:22-cv-01434-SSS-KKx, 2023 WL 2338302, at *2 (C.D. Cal. Mar. 2, 2023) (dismissing with leave to amend claim for aiding wiretapping where Plaintiff's only allegation related to the software providers was that they "harvest valuable data from such [customer] communications for the benefit of their clients like Defendant"); *Yoon*, 549 F. Supp. 3d at 1081 ("For the purposes of the instant Motion, Yoon's first claim for relief survives Quantum Metric's participant exception challenge because she alleges that QM captures,

7

stores, and interprets her real-time data—which extends beyond the ordinary function of a tape recorder.").

However, courts have also pointed out that relying on this distinction arguably reads a "use" requirement into the second prong of § 631 that does not exist. *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023). Nothing in the statutory language of the second prong suggests an intent to limit the liability to those who *use* the intercepted information. Cal. Penal Code § 631(a) (penalizing under the second prong anyone who "reads, or attempts to read, or to learn the contents or meaning of any message … "). Moreover, the third prong of the statute already penalizes use. *Id.* (penalizing under the third prong of the statute anyone who "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained … ").[4] "Thus, reading a use requirement into the second prong would add requirements that are not present (and swallow the third prong in the process)." *Javier*, 649 F. Supp. 3d at 900.

The Court need not resolve this judicial split. Even if the Court adopts the view that prong two of § 631 requires Plaintiff to allege that the Session Replay Providers collected Plaintiff's information for some use beyond supplying it back to Acushnet, Plaintiff has met that threshold here. Plaintiff alleges that the Session Replay Providers use the intercepted communications to "recreate" the visitor's entire visit and watch it back as a video. FAC ¶ 6 ("After intercepting and capturing the Website Communications, Acushnet and the Session Replay Providers *use* those Website Communications to *recreate* website visitors' entire visit") (emphasis added); *see also id.* ¶¶ 59, 69, 72, 84. Plaintiff also alleges that the Session Replay Providers cross-reference and analyze user activity across all the websites they monitor. *Id.* ¶¶ 39-40. This allegation in particular shows the Session Replay Providers actively working with the data—not just storing it as a tape recorder—and also implies that the Session Replay Providers have some greater use for the data beyond simply storing it for Defendants' use. *See Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005) ("On a motion to dismiss for failure to state a claim, the court must construe the complaint in the light most favorable to the plaintiff, taking all her allegations as true and *drawing*

---

[4] An eavesdropper need only violate one prong of § 631 to be penalized under the statute.

*all reasonable inferences* from the complaint in her favor.") (emphasis added).

Therefore, the Court finds Plaintiff has sufficiently alleged that the Session Replay Providers are third-parties subject to CIPA. The ultimate determination on this question is left for another day. *See Yoon*, 549 F. Supp. 3d at 1081 (whether the Session Replay Provider is a tape recorder or an eavesdropper "is a question of fact for a jury, best answered after discovery into the storage mechanics of Session Replay").

### 3. Session Replay Providers Intercepted Communications While "In Transit"

Defendants also argue that Plaintiff's CIPA claim fails because he fails to demonstrate the communication was "intercepted while in transit." Motion at 17-19. Here, too, the Court finds that the allegations are sufficient. "[T]he particulars of the eavesdropping mechanism are of little consequence to the section 631 analysis." *Revitch v. New Moosejaw, LLC*, No. 18-CV-06827-VC, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019). The Ninth Circuit has construed the term "intercept" according to its ordinary meaning as the "act of acquiring, or coming into possession of." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022) (citation omitted) (discussing the analogous federal Wiretap Act). "Such acquisition occurs when the contents of a wire communication are captured or redirected in any way." *Noel v. Hall*, 568 F.3d 743, 749 (9th Cir. 2009) (citation omitted).

Section 631 prohibits eavesdropping of a message "while [it] is in transit or passing over any wire, line, or cable, *or is being sent from, or received at any place within this state.*" Cal. Penal Code § 631(a) (emphasis added). Therefore, the second prong of CIPA explicitly extends "to the beginnings and ends of communications." *Revitch*, 2019 WL 5485330, at *2 ("Revitch began each communication by pressing a button on his mouse or a key on his keyboard, causing one signal to travel to his computer and then through his browser to Moosejaw's server. Even if the browser caused a parallel signal to be sent to NaviStone, that intervention happened while the signal was already in transit from Revitch's device.").

Plaintiff alleges Session Replay Code intercepts "the occurrence of actions the user takes" on the website, FAC ¶ 28, and captures the data "at hyper-frequent intervals," FAC ¶ 29. Plaintiff alleges sufficient facts to show the interception is made while in transit.

Therefore, the Court finds Plaintiff has stated a claim for violation of Cal. Penal Code § 631(a) and *denies* Defendants' Motion as to Claim 1.

**B. Constitutional and Common Law Invasion of Privacy**

Plaintiff's third claim for relief is for invasion of privacy under Article I, Section 1 of the California Constitution. FAC ¶¶ 133-143. His fourth claim for relief is for common law intrusion upon seclusion. *Id*. ¶¶ 144-157.

Article I, section 1 of the California Constitution declares privacy an inalienable right of the people of California. CAL. CONST. Art. I, § 1. The California state law right is broader than the federal privacy right because it protects individuals from invasion of privacy by private parties as well as state actors. *Leonel v. Am. Airlines, Inc.*, 400 F.3d 702, 711–12 (9th Cir. 2005), *opinion amended on denial of reh'g*, No. 03-cv-15890, 2005 WL 976985 (9th Cir. Apr. 28, 2005). To establish a claim under the California Constitution's right to privacy, a plaintiff must demonstrate three elements: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the protected privacy interest. *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287, 97 Cal. Rptr. 3d 274 (2009); *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35–37, 26 Cal. Rptr. 2d 834 (1994).

To state a claim for intrusion upon seclusion under California common law, a plaintiff must plead that (1) a defendant intentionally intruded into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy and (2) the intrusion occurred in a manner highly offensive to a reasonable person." *Hernandez*, 47 Cal. 4th at 286. "Because of the similarity of the tests, courts consider the claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 601.

In assessing the viability of the plaintiff's claims for invasion of privacy under the California Constitution and for intrusion upon seclusion under California common law, the Ninth Circuit explained that "[t]he existence of a reasonable expectation of privacy, given the circumstances of each case, is a mixed question of law and fact." *Id*. To determine whether a reasonable expectation of privacy exists, the Court considers "whether a defendant gained unwanted access to data by

electronic or other covert means, in violation of the law or social norms." *Id.* at 601-602 (citation omitted). This question depends on "a variety of factors, including the customs, practices, and circumstances surrounding a defendant's particular activities." *Id*. at 602 (citation omitted).

An examination of the developing caselaw in this context highlights a useful distinction. In assessing whether there is a reasonable expectation of privacy, courts are more willing to find an expectation of privacy where the technology tracks the user ***beyond the specific website*** doing the surveillance. *See id.* 602–03 (finding that Facebook users have a cognizable privacy interest in browsing data surreptitiously collected by Facebook across the internet after the user had logged out of his Facebook account). In contrast, courts are less likely to find that users have a cognizable privacy interest in browsing data collected only while users interact with the website of the defendant company. *See Yoon*, 549 F. Supp. 3d at 1086 (finding Plaintiff did not allege a privacy interest where she failed to allege facts that suggest the Session Replay Provider tracked her data outside the Lululemon website).

Here, there are allegations that the surveillance extends beyond the Acushnet sites. Plaintiff alleges that the Session Replay Code can track a user's activity across different websites by creating a "fingerprint" that is unique to a particular user and matching identifying information that user enters on any site that the Session Replay Provider monitors. FAC ¶¶ 39, 40. The ability to link identifying information collected to the user's fingerprint enables the Session Replay Providers to collect and analyze a user's activity across numerous websites—even "websites where the user had intended to remain anonymous" through, by example, enabling private browsing. *Id*. ¶ 40.

Moreover, Plaintiff provided allegations supporting the inference that consumers expect their interactions with a website to be cabined to that recipient. *Id*. ¶¶ 20-22. And Plaintiff alleges the collection of information, at least some of which is plausibly "sensitive and confidential." *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d at 603 (citation omitted); *see* FAC ¶ 32 (alleging session replay technology captures, among other things credit card details and medical conditions). On these facts, and at this stage of the proceedings, the Court cannot conclude as a matter of law that *no* reasonable expectation of privacy exists.

The second part of the inquiry—whether the intrusion was highly offensive—is even less

suited for disposition at the pleading stage. The Ninth Circuit has said, "[u]nder California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is." *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019). The Court agrees and heeds that warning. Here, Plaintiff has included enough to allege plausibility as to this factor of the test. *See, e.g.*, *Revitch*, 2019 WL 5485330, at *3 (concluding a finder of fact could find the intrusion that allowed Defendant to associate Plaintiff's browsing habits with his identity highly offensive and declining to dismiss the invasion of privacy claims). Whether the intrusion at issue here would be highly offensive to a reasonable person is a question of fact not appropriate under a Rule 12(b)(6) analysis.

Therefore, the Court finds Plaintiff has sufficiently stated the claims for invasion of privacy, and ***denies*** Defendants' Motion as to Claims 3 and 4.

## C. California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*

California's Unfair Competition Law ("UCL") prohibits business practices that are unlawful, unfair, or fraudulent. *See* Cal. Bus. & Prof. Code § 17200, *et seq.* "[T]o bring a UCL claim, a plaintiff must have UCL standing, which is distinct from Article III standing." *See, e.g.*, *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1144 (E.D. Cal. 2021); *see also Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1132 (N.D. Cal. 2014) ("[A] federal plaintiff's [Article III] injury in fact may be intangible and need not involve lost money or property ... a UCL plaintiff's 'injury in fact' [must] specifically involve lost money or property.") (citation omitted). To demonstrate UCL standing, a plaintiff "must establish that they (1) suffered an injury in fact and (2) lost money or property as a result of the unfair competition." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009) (citing Cal. Bus. & Prof. Code § 17204).

Plaintiff alleges that aggregated personal, engagement, behavioral, and attitudinal data is valuable to companies because it can help them improve customer experiences and refine their marketing strategies. FAC ¶¶ 14, 16. Plaintiff also alleges that there is an economic market for data such that consumers can sell certain non-public information, including web browsing history, to data brokers "who in turn aggregate[] the information and provide[] it to marketers or app developers." FAC ¶ 15.

12

The Court finds for several reasons that these allegations fall short of showing how Plaintiff himself lost money or property when Session Replay Providers captured his communications with Acushnet.  First, Plaintiff does not allege that he intended or attempted to participate in this data market.  *See Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 538, 299 Cal. Rptr. 3d 544, 564 (2022), *review denied* (Dec. 14, 2022) ("Appellants properly pled only that their PII was stolen and disseminated, and that a market for it existed.  They did not allege they ever attempted or intended to participate in this market, or otherwise to derive economic value from their PII.").  Nor does Plaintiff allege that that he lost the ability to participate in the data market when his communications were intercepted.  In other words, Plaintiff does not allege how he "lost" those communications or was prevented from capitalizing on them in the existing market.

Second, alleging that data and information has value generally does not establish that the specific communications captured here are Plaintiff's "property."  While Plaintiff alleges he may have been able to sell his web browsing history in the aggregate, he does not allege that his specific communications with Acushnet during the browsing session (including mouse movements, clicks, scrolls, zooms, window resizes, and keystrokes) could be sold.  Nor does he allege that Acushnet was obligated to compensate him for those communications.  This conclusion aligns with the weight of authority finding that Plaintiff must show—not just that data is valuable in the abstract or in the aggregate—but that the information had actual economic value to Plaintiff, which was lost.  *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1040 (N.D. Cal. 2019) ("[Plaintiff] has not shown how this information has economic value *to him*.  That the information has external value, but no economic value to plaintiff, cannot serve to establish that plaintiff has personally lost money or property.") (emphasis in original); *see also Pruchnicki v. Envision Healthcare Corp.*, 845 Fed. App'x 613, 614–15 (9th Cir. 2021) ("Although the studies cited by Pruchnicki establish that personal information may have value in general, Pruchnicki failed to adequately allege that *her* personal information actually lost value.") (emphasis in original); *In re Facebook, Inc., Consumer Priv. Litig.*, 402 F. Supp. 3d at 804 ("Facebook may have gained money through its sharing or use of the plaintiffs' information, but that's different from saying the plaintiffs lost money."); *Hazel v. Prudential Fin., Inc.*, No. 22-cv-07465-CRB, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023) ("[J]ust because

13

Plaintiffs' data is valuable in the abstract, and because ActiveProspect might have made money from it, does not mean that Plaintiffs have 'lost money or property' as a result."); *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 994, 125 Cal. Rptr. 3d 260, 267 (2011), *as modified* (June 7, 2011) ("The fact that the address had value to [Defendant], such that [Defendant] paid Experian a license fee for its use, does not mean that its value to plaintiff was diminished in any way.").

And critically, the most relevant Ninth Circuit authority requires dismissal here.  In *In re Facebook Privacy. Litigation*, the Ninth Circuit affirmed the dismissal of a plaintiffs' UCL claim because, while Plaintiffs alleged they were "harmed both by the dissemination of their personal information and by losing the sales value of that information," the Ninth Circuit found that "plaintiffs failed to allege that they 'lost money or property as a result of the unfair competition.'" 572 Fed. App'x 494, 494 (9th Cir. 2014) (citing Cal. Bus. & Prof. Code § 17204) (finding the allegations were sufficient to establish damages for plaintiffs' breach of contract and fraud claims, but *not* to establish UCL standing).

In short, Plaintiff cannot show that his communications with Acushnet had economic value *to him* and that he *lost* either those communications or money.  Therefore, Plaintiff lacks standing to pursue a UCL claim.  The Court **grants** Defendants' Motion as to Claim 6.

**D.  Statutory Larceny, Cal. Penal Code §§ 484, 496**

For similar reasons, the Court finds that Plaintiff cannot state a claim for statutory larceny because his mouse clicks and keystrokes are not "property" that could have been stolen under Cal. Penal Code § 496.  Section 496 provides:

> Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a county jail for not more than one year, or imprisonment pursuant to subdivision (h) of Section 1170.

Cal. Penal Code § 496(a); *see also* Cal. Penal Code § 496(c) (authorizing a civil action for treble damages, costs, and fees for those injured by a violation of subdivision (a)).

The California Penal Code defines property to include "both real and personal property" and further defines personal property to include "money, goods, chattels, things in action, and evidences of debt." Cal. Penal Code § 7, ¶¶ (10), (12). Although the use of "includes" in the statutory definitions indicates this is a non-exhaustive list, "there [is no] indication of any intent to use the term 'property' in section 496 more broadly than the definition of the same term already provided by the Penal Code." *Lacagnina v. Comprehend Sys., Inc.*, 25 Cal. App. 5th 955, 969, 236 Cal. Rptr. 3d 641, 651 (2018), *as modified* (Aug. 14, 2018); *see also People v. Dolbeer*, 214 Cal. App. 2d 619, 622–23, 29 Cal. Rptr. 573, 574–75 (Ct. App. 1963) (suggesting "mere information" would not constitute property under Section 496, but finding the stolen lists were physical goods under Penal Code § 7).[5]

---

[5] In deciding whether something is "property" under Cal. Penal Code § 496, some cases have seized on the following quote: "Anything that could be the subject of a theft can also be property under section 496." *See, e.g.*, *Bell v. Feibush*, 212 Cal. App. 4th 1041, 1049, 151 Cal. Rptr. 3d 546, 552 (2013). Courts taking this sentence at face value then ask whether the "thing" could be the subject of a "theft" as defined by Cal. Penal Code § 484. Cal. Penal Code § 484(a) ("'Theft' defined") ("Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft."); *see, e.g.*, *Broidy Cap. Mgmt. LLC v. Muzin*, No. 19-CV-0150 (DLF), 2020 WL 1536350, at *16 (D.D.C. Mar. 31, 2020) (finding electronically stored information was property under § 496 because "[a]nything that can be the subject of theft can also be property under section 496.").

But the Court takes the quote less literally after a closer examination of its origin. An inspection of the early cases using this language suggests the statement was dicta meant to convey that any enumerated item in the larceny chapter was also covered by the possession statute of § 496.

The statement "[a]nything that can be the subject of a theft can also be property under section 496" originated in *People v. Norwood*. There, the Court of Appeal was deciding whether a Los Angeles County 'Auditor Controller's General Warrant' document fell within the purview of Cal. Penal Code § 475(a), which prohibited possession, with the intent to defraud, of three specific items: checks, money orders, and traveler's checks. Cal. Penal Code § 475(a) (repealed by Stat. 1998, c. 468 (A.B. 2008) § 5). The Court found the warrant, which stated the County "will pay to the order of [payee's name] $161.00," did not fall into the three categories of documents enumerated in Section 475(a). 26 Cal. App. 3d 148, 153 (1972). However, the Court explained that the warrant could be the subject of a theft under Penal Code Section 492 (theft of written instruments) and 494 (theft of written instruments completed but not delivered) and therefore fell under the § 496 possession statute. *Id.* at 157 ("The warrant could be the subject of a theft (Pen. Code, §§ 492, 494) and anything that could be

15

In support of this conclusion, the Court looks to California law regarding the existence of property rights more generally. In the context of California civil law, the Ninth Circuit has found "three criteria must be met before the law will recognize a property right: [f]irst, there must be an interest capable of precise definition; second, it must be capable of exclusive possession or control; and third, the putative owner must have established a legitimate claim to exclusivity." *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 902–03 (9th Cir. 1992) (distilling caselaw interpreting the definition of property in Cal. Civ. Code §§ 654, 655 in various civil contexts into a set of three principles); *see also Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1030 (N.D. Cal. 2012) (applying the three part test to determine whether Plaintiff established the requisite "property interest" to state a claim for conversion under California law). Some cases in this district have applied the *G.S. Rasmussen* three-part specifically in the context of a civil claim under Cal. Penal Code § 496. *See Monster Energy Co. v. Vital Pharms., Inc.*, No. 18-cv-1882-JGB-SHKx, 2019 WL 2619666, at *14 (C.D. Cal. May 20, 2019) (applying the three-part test to determine there was no property interest sufficient to state a claim "based on the conversion of goods or, by extension, the theft of goods" under Cal. Civ. Code § 496); *New Show Studios LLC v. Needle*, No.

---

the subject of a theft can also be property under Penal Code section 496."). The Court was listing *specific* sections in the larceny code prohibiting theft of *enumerated* items. Therefore, in context, it is clear the court was saying possession of any enumerated item in the larceny code would be a violation of Section 496.

The statement is also commonly attributed to *People v. Gopal.* 171 Cal. App. 3d 524 (1985). Similarly, in *People v. Gopal*, the Court of Appeal found that, although the subsection covering theft of trade secrets (Cal. Penal Code § 499(c)) did not expressly prohibit *possession* of stolen trade secrets, such possession would be covered by § 496. *Id*. at 541.

These cases illustrate that "anything that could be the subject of a theft" ought not to be taken so literally. Doing so creates a circular definition that strips the word "property" of its meaning and overrides the statutory definition of "property" set forth in § 7. It simply can't be that *anything* that is, for example, knowingly obtained by fraudulent representation (and therefore meets the definition of "theft" under § 484) is "property" under § 496.

The larceny chapter of the Penal Code does not contain a section prohibiting the theft of a website user's communications with that website. Of course, that does not necessarily mean the communications are *not* "property" under § 496. But it does mean that we must rely on a different definition of property to answer the question here.

14-CV-01250-CAS, 2014 WL 2988271, at *10, n. 4 (C.D. Cal. June 30, 2014) (stating "to assert either a claim for conversion or a claim for receiving stolen property, plaintiffs must explain why they have a property interest in that information" and applying the three-part test from *G.S. Rasmussen*).

Applying this test, Plaintiff's communications with Acushnet are not "property" because they are not capable of exclusive possession or control.  The Court agrees with "the weight of authority holds that a plaintiff's 'personal information' does not constitute property." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1030 (N.D. Cal. 2012) (finding user identification numbers, URL pages viewed, and browser history was not "property" because it was not "capable of exclusive possession or control" and Plaintiff could not establish a "legitimate claim to exclusivity" over it); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1075 (N.D. Cal. 2012) (finding personal information such as user's location, zip code, device identifier, and other data is not capable of precise definition, nor exclusive possession or control).

Moreover, Plaintiff's statutory larceny claim fails because Plaintiff does not allege actual damages for his claim of possession of stolen property against Acushnet.  "[A] claim for civil theft must include actual damages." *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1042 (N.D. Cal. 2018) (citing Cal. Penal Code § 496(c)).  "Several courts in this Circuit have found, and we agree, that the 'mere misappropriation of personal information' does not establish compensable damages." *Pruchnicki*, 845 Fed. App'x at 614–15; *see also Low*, 900 F. Supp. 2d at 1030 ("Low has failed to allege how he was foreclosed from capitalizing on the value of his personal data or how he was 'deprived of the economic value of [his] personal information simply because [his] unspecified personal information was purportedly collected by a third party.'").  Plaintiff does not allege actual damages required for a civil claim under Cal. Penal Code § 496(c).

Because Plaintiff fails to state a claim for statutory larceny, the Court ***grants*** Defendants' Motion with respect to Claim 2.

## V.    CONCLUSION

For the reasons stated herein,[6] Acushnet's Motion to Dismiss is **granted in part** and **denied in part**.  Because Plaintiff has stated a claim for violation of CIPA, Cal. Penal Code § 630, *et seq.* (Claim 1), Invasion of Privacy under Cal. Const. Art. I § 1 (Claim 3), and Invasion of Privacy at common law (Count 4), the Court **denies** Defendants' Motion as to those claims.  Because the Court's decision here forecloses Plaintiff's claim for statutory larceny under Cal. Penal Code §§ 484, 496 (Claim 2) and his claim for violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.* (UCL) (Claim 6), the Court **grants** Defendants' Motion without leave to amend as to those claims.[7]

Dated: November 20, 2023

_____
Hernán D. Vera
United States District Judge

---

[6] Acushnet also argues that Plaintiff's claims are barred by the applicable statute of limitations. However, "[a] claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)); *see also Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1206 (9th Cir.1995).  ("[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.").  Plaintiff's FAC does not present a statute of limitations issue that is facially apparent. *See Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).  Therefore, the Court will not dismiss the FAC on that basis.

[7] Although generally a court granting a motion to dismiss should also grant leave to amend, "leave to amend need not be granted when 'any amendment would be an exercise in futility … .'" *Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1103 (9th Cir. 2018) (quoting *Steckman v. Hart Brewing*, Inc., 143 F.3d 1293, 1298 (9th Cir. 1998)).  Since Plaintiff cannot allege the intercepted communications are "property" under either the UCL or Cal. Penal Code §§ 484, 496, the Court concludes any amendment on these claims would be futile.

18